**STATE OF WEST VIRGINIA**

*In re* **M.C., D.C., and K.C.**

**No. 19-0686** (Cabell County 18-JA-85, 18-JA-87, and 18-JA-88)

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.R., by counsel Steven T. Cook, appeals the Circuit Court of Cabell County's June 27, 2019, order terminating her parental rights to M.C., D.C., and K.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Cathy L. Greiner, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights, denying her an extension of her post-adjudicatory improvement period, and failing to place the children with a relative.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner additionally asserts a fourth assignment of error alleging that the circuit court erred in denying her motion to transfer the case to the State of Tennessee. We note, however, that petitioner's argument in support contains no citations to any relevant authority regarding jurisdiction in abuse and neglect proceedings or any other authority that would support her position. This failure is in direct contradiction of this Court's Rules of Appellate Procedure and directives issued by administrative order. Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief *must contain an argument exhibiting clearly the points of* fact and *law presented, the standard of review applicable, and citing the authorities relied on*, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not dequately supported by specific references to the record on appeal.

(continued . . . )

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed an abuse and neglect petition that alleged a history of truancy, domestic violence, "deplorable" conditions in the home, and that the children suffered from head lice, which one child indicated had not been treated for two months. At the time, the children were living in a home with their father and V.W., the mother of a child not at issue on appeal. Upon responding to a report of a domestic violence incident and possible discharge of a firearm at the residence, it was discovered that the home's bathroom was not usable. In fact, the father admitted that the family "[took] baths down the street" because he was still working on the home's plumbing. Additionally, the DHHR indicated that there were no sheets on the bed, there was "limited food," and the family's dishes were "dirty and stacked." One child also indicated that the parents "had gotten into a fight and he was scared," although the parents refused to let him speak with Child Protective Services ("CPS") alone. Another child indicated that the parents argued and that she would run to another home "when stuff is getting thrown." The DHHR also alleged that the family had an open CPS case in Kentucky and was required to inform their social worker there if they planned to move, which they failed to do.

In regard to petitioner, the petition indicated that she informed the DHHR that "she lost custody of her children in 2011 in Wilson County, Tennessee, due to failing a drug screen during a Child Services case the family had." According to petitioner, the children's father complied with the requirements of that case "and in 2012 the children were placed in his care." Petitioner additionally informed the DHHR that she was incarcerated from 2013 to 2016. Based on these facts, the DHHR alleged that petitioner failed to support the children both financially and emotionally. Petitioner thereafter waived her preliminary hearing.

---

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented . . . as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to this assignment of error is inadequate and fails to comply with Rule 10(c)(7), we decline to address it on appeal.

Petitioner failed to appear for the adjudicatory hearing held in June of 2018, although she was represented by counsel. Ultimately, the circuit court adjudicated petitioner upon her failure to emotionally and financially support the children. Thereafter, during a hearing in July of 2018, the circuit court was informed that petitioner had recently moved from Tennessee to New Orleans, Louisiana. Additionally, CPS indicated that the children were "very angry" with petitioner because of her extended absence from their lives and they did not want to speak with her. Visitation was discussed so that petitioner could establish a relationship with the children. Ultimately, the circuit court granted petitioner a post-adjudicatory improvement period that required her to submit to weekly random drug screens, complete parenting and adult life skills classes, attend therapy, obtain and maintain stable housing and employment, and visit with the children to rebuild their relationship. Prior to the granting of the improvement period, the DHHR contacted service providers in New Orleans in an attempt to arrange for the provision of services there.

In August of 2018, the circuit court held a review hearing, during which the DHHR indicated that petitioner had again relocated to Tennessee, despite the fact that it had arranged for the provision of services in New Orleans. Because of her relocation, the DHHR indicated that it would have to seek new providers. At that time, petitioner had not initiated any services and the DHHR was also experiencing problems contacting her. At a second review hearing in October of 2018, a CPS worker testified to petitioner's noncompliance with the terms of her case plan. Although the DHHR arranged for services for petitioner in Tennessee, the evidence showed that she failed to comply with a single requirement because of transportation issues. The DHHR moved to terminate petitioner's improvement period, but the circuit court denied the motion. At a hearing in November of 2018, the circuit court found that petitioner was minimally compliant with the terms of her case plan, despite the fact that she had completed only one drug screen that was positive for marijuana. As such, the court ordered her improvement period would continue. At a hearing in December of 2018, the circuit court heard evidence of petitioner's continued noncompliance, including the fact that she had not submitted to any drug screens since the prior hearing; had not seen her children since November of 2018, despite the fact that she was aware of the importance of rebuilding the relationship due to her past extended absence; and had not completed any parenting classes. Additionally, at the time of the hearing, petitioner's residence was unknown.

At the dispositional hearing in February of 2019, petitioner's counsel informed the court that her absence was due to her enrollment in a detoxification facility. The DHHR then presented evidence of petitioner's noncompliance in the proceedings, including her failure to obtain stable housing or employment, inconsistencies in visitation, and her failure to complete parenting services. Upon findings that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected and that the children's welfare required it, the circuit court terminated petitioner's parental rights to the children.[3] It is from the dispositional order that petitioner appeals.

---

[3]The father's parental rights were also terminated below. According to the DHHR, the permanency plan for the children is adoption in their respective foster homes.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

In support of her first assignment of error, petitioner argues that termination of her parental rights was inappropriate and cites to West Virginia Code § 49-4-604(e), which provides as follows:

> The court may not terminate the parental right of a parent *on the sole basis* that the parent is participating in a medication-assisted treatment program, as regulated in § 16-5Y-1 et seq., for substance use disorder, as long as the parent is successfully fulfilling his or her treatment obligations in the medication-assisted treatment program.

(Emphasis added). We find, however, that petitioner's reliance on this statute entitles her to no relief, given that the record does not show that the circuit court relied on her participation in such a program as a basis for the termination of her parental rights, let alone that it was the *sole* basis for termination. Instead, the circuit court was presented with evidence that petitioner was "noncompliant with her family case plan" and had not completed random drug screens since December of 2018. Further, the DHHR established that petitioner had "not obtained stable housing or employment; . . . [had] not . . . complet[ed] parenting services; and . . . ha[d] not had any visitation with the . . . children." Based upon this evidence, the circuit court found that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future, in accordance with the applicable statute. *See* W. Va. Code § 49-4-604(c)(3) (providing that there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan"). Given the overwhelming evidence of petitioner's noncompliance, it is clear that the circuit court's finding in this regard was appropriate. Further, the circuit court found that termination of petitioner's parental rights was required to "assure the

4

physical and emotional well-being of the children."[4] According to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. As such, we find no error in the termination of petitioner's parental rights.

Petitioner additionally relies on "the same reasons cite[d]" in support of her argument regarding termination to support her argument that an extension of her post-adjudicatory improvement period was warranted. We disagree. Pursuant to West Virginia Code § 49-4-610(6), "[a] court may extend any improvement period . . . *when the court finds that the respondent has substantially complied with the terms of the improvement period*." (Emphasis added). As outlined above, the circuit court specifically found that petitioner was noncompliant with the terms of her case plan, which clearly supports the denial of an extension, especially in light of the fact that West Virginia Code § 49-4-610 provides circuit courts discretion to extend or terminate an improvement period. While it is true that petitioner "made multiple trips to West Virginia to see the children and attend . . . court," she fails to recognize that her sporadic visitation with the children was detrimental to their welfare and insufficient to establish the bond necessary to return them to her care. As the evidence established, the children expressed anger at petitioner due to her past extended absence from their lives. In order to foster a relationship between petitioner and the children, she was required to regularly attend visits with them. Despite these facts, petitioner failed to visit the children after the review hearing in November of 2018, wherein her improvement period was allowed to continue. Given that she failed to visit with the children from November of 2018 through February of 2019, it is clear that an extension to her improvement period was not appropriate. *See In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) ("[T]he level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child.") (citations omitted). As such, we find no error in the circuit court's denial of an extension of petitioner's post-adjudicatory improvement period.

---

[4]On appeal, petitioner asserts that "[t]he children were molested in foster care while in the sole care and custody of the [DHHR] around July of 2018." Petitioner relies on this assertion to argue that the children "would have likely faired far better had they been returned" to her care. What petitioner fails to recognize, however, is that she was not entitled to the return of her children unless she corrected the conditions of abuse and neglect at issue, which she failed to do. In short, it was the mother's actions that necessitated the children's placement in foster care and her continued refusal to comply with the requirements necessary to correct the conditions of abuse and neglect that required their continued placement there. Regardless of whether the children suffered harm while in a foster placement, return to petitioner's home was inappropriate under the circumstances of the case. On the contrary, if the children did suffer additional abuse, as alleged, the appropriate action would be for the DHHR to investigate and take corrective action to ensure the children's safety while in its legal custody. Based on representations on appeal, this is what occurred, as the DHHR asserts that "[a] criminal trial has been scheduled" regarding these allegations. As such, any argument petitioner raises on appeal in which she relies on these allegations for support does not entitle her to relief.

Finally, petitioner argues that the circuit court erred in failing to place the children with their maternal grandmother. However, we find that there is nothing in the record to show that such placement would be in the children's best interest. On the contrary, the children's guardian asserts that the grandmother could not pass a home study in order to obtain custody of the children, although the guardian acknowledges that the grandmother later asserted that she eventually obtained what she believed to be appropriate housing. However, the grandmother's assertion is entirely unsupported and has no basis in the record. As this Court has routinely held, "[t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Given that the record is devoid of any evidence that the grandmother would be an appropriate placement for the children, let alone that such placement would be in the children's best interest, we find that petitioner is not entitled to relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 27, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6